UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SAUDABAD CONVENIENCE, INC., d/b/a
NEWPORT MART,
        Plaintiff

    v.                                              C.A. No. 013-298-ML

UNITED STATES DEPARTMENT OF
AGRICULTURE,
        Defendant

**MEMORANDUM AND ORDER**

The plaintiff, Saudabad Convenience, Inc. d/b/a Newport Mart ("Newport Mart"), challenges its permanent disqualification from participating in the Supplemental Nutrition Assistance Program ("SNAP") following a determination by the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA") that Newport Mart was engaged in the trafficking of Electronic Benefit Transfers ("EBT").

The matter before the Court is the USDA's motion for summary judgment (Dkt. No. 15). Newport Mart has filed an objection (Dkt. No. 17), to which the USDA has filed a reply (Dkt. No. 20). For the reasons that follow, the USDA's motion for summary judgment is granted.

**I. Summary of Facts**[1]

SNAP is intended "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. To implement that policy, eligible households receive monthly allotments which may be "used only to purchase food from retail food stores which have been approved for participation" in SNAP. 7 U.S.C. §2013(a). Families receive monthly SNAP benefits via plastic EBT debit cards, which can be used only at authorized retail stores and only for eligible food items, such as "[a]ny food or food product intended for human consumption except alcoholic beverages, tobacco, and hot foods or hot food products prepared for immediate consumption." 7 U.S.C. § 2012(k); 7 C.F.R. § 271.2. Other eligible foods include seeds and plants to grow foods for personal consumption and, under certain conditions, meals prepared and delivered or served in a communal or residential setting. 7 U.S.C. § 2012(k); 7 C.F.R. § 271.2. Non-food items such as paper goods or household cleaning supplies are not

---

[1] The Summary of Facts is based on the Administrative Record ("AR")(Dkt. No. 7) and the government's Statement of Undisputed Facts ("SUF") in support of its motion for summary judgment (Dkt. No. 16). The Court notes that Newport Mart's Statement of Disputed Facts ("SDF"), (Dkt. No. 18), does not controvert any of the facts asserted in the SUF; rather, the SDF seeks to provide explanations for the government's assertions. See Local Rule LR Cv 56(3).

eligible for purchase with SNAP benefits. Id.

SNAP regulations specifically prohibit participating stores from "trafficking," *i.e.* exchanging SNAP benefits for cash. Trafficking is defined as "buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food..." 7 C.F.R. § 271.2. As provided by SNAP regulations, "if [p]ersonnel of the [store] have trafficked as defined in § 271.2," such a violation will result in the permanent disqualification of a store from participating in SNAP. 7 C.F.R. § 278.6(e)(1); 7 U.S.C. § 278.6.[2]

In order to detect trafficking or other fraudulent activity involving SNAP benefits, the FNS monitors stores through the Anti-Fraud Locator Using Electronic Benefit Retailer Transactions ("ALERT") computer program. When a store triggers an ALERT report

---

[2] As noted by the USDA in its memorandum, under a limited exception to permanent disqualification, the USDA may impose a civil monetary penalty ("CMP") if a timely request for a CMP is made and eligibility for a CMP is established. 7 U.S.C. § 2021(b)(3)(B) (requiring "substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and the regulations."). It is undisputed that (1) the USDA informed Newport Mart of the exception to permanent disqualification and imposition of a CMP by letter dated August 7, 2012 (AR 96-98); and (2) in its August 17, 2012 response to the USDA, Newport Mart did not request consideration of a CMP. (AR 131-135).

through a pattern of suspicious transactions, the FNS may conduct an investigation, including a store visit, and the USDA may open a case and proceed with an administrative action against the store.  Under SNAP regulations, "disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, <u>inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system</u>, or the disqualification of a firm from the Special Supplemental Nutrition Program for Women, Infants and Children (WIC), as specified in paragraph (e)(8) of this section." 7 C.F.R. § 278.6(a) (emphasis added); 7 U.S.C. § 2021(a)(2)("Regulations promulgated under this chapter shall provide criteria for the finding of a violation of, the suspension or disqualification of and the assessment of a civil penalty against a retail food store or wholesale food concern on the basis of evidence that may include facts established through on-site investigations, <u>inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system</u>.")(emphasis added).

Newport Mart, a small convenience store in Middletown, Rhode Island, has been authorized under SNAP since September 10, 2001. AR 82. In 2012, the store came to the attention of the FNS when

4

its EBT transactions triggered an ALERT report. SUF ¶ 4. The report - which was generated for Newport Mart's transactions between January and March 2012 (the "Review Period") - reflected four different categories of statistically unusual EBT transactions:

> (1) purchases of multiple items by different households within a short time frame ("multiple purchase transactions were made too rapidly to be credible"), see AR 8;
> (2) rapid and repetitive transactions involving the same household ("multiple transactions were made from individual benefit accounts in unusually short time frames"), see AR 16;
> (3) the depletion of all or a majority of monthly benefits in one transaction ("the majority or all of individual recipient benefits were exhausted in unusually short periods of time"), see AR 25; and
> (4) a large number of high-dollar transactions ("excessively large purchase transactions were made from recipient accounts"), see AR 28; SUF ¶ 5.

As to the first category, the ALERT report reflected 61 sets of purchases ranging from 22 seconds between transactions to 3 minutes and 44 seconds. SUF ¶¶ 6,7.

Regarding the second category, the ALERT report identified 181 sets of multiple purchases by the same individual households transacted within a short time period. SUF ¶¶ 8, 9.

With respect to the third category, the USDA notes (and Newport Mart does not dispute) that "[a]n analysis of EBT redemption patterns reflects that an average of 90 percent of a household's monthly SNAP allotment is not spent until three weeks

after the day that the benefits are issued." SUF ¶ 21. However, the ALERT report on the EBT transactions at the Newport Mart identified 41 accounts in which a household depleted the majority or all of its monthly SNAP allotment in one or a few transactions at Newport Mart and the report reflected that all but one of those 41 households depleted their balance within the first week of the month. SUF ¶¶ 15, 16.

Regarding the category involving large purchases, the USDA notes that, in Rhode Island, the average transaction in a convenience store is $11.00, and, in a small grocery store, $16.49. SUF ¶¶ 10, 11. In contrast, 50 of the 181 Newport Mart transaction identified in the ALERT report exceeded $50.00 and 23 of the transactions had a total of more than $100.00. In the course of the Review Period, 523 EBT transactions conducted at Newport Mart ranged from $45.56 to 409.81. SUF ¶ 25. To put those numbers in context, in March 2012, Newport Mart's EBT redemption totals were between three to thirty-four times the amount transacted for the same month at four nearby comparable stores. SUF ¶ 31.

On May 10, 2012, FNS Field Officer David Dombroski ("Dombroski") conducted an on-site inspection of the Newport Mart store. During his visit, Dombroski took photographs inside and outside the store, took an inventory survey, and made a diagram

6

of the store's physical layout. SUF ¶ 32. In his "Store Visit Summary" (AR 33-48), Dombroski noted that Newport Mart had only one POS [point-of-sale] device, no optical scanners, no conveyor belts, no hand-held baskets, and no shopping carts. Dombroski also observed that the check-out area was very small and that the actual counter space for food placement was only 3 by 2 feet. SUF ¶ 34. At the time in question, "Newport Mart did not sell hot food, had no promotional, special or packaged items, no bulk sales, stocked a moderate supply of staple food items, few perishable items, and carried no high-priced staple foods." SUF ¶ 35. Specifically, Dombroski's report noted that of 10 coolers, only one contained milk and eggs, another contained some packaged meats and cheeses; and the rest contained a mix of soda and juice. AR 38. Most of the food items were snack foods or small quantity packages of food; the food stock in the rear of the store consisted mainly of canned foods that did not seem to be moving as they showed evidence of dust. Id.; SUF ¶ 36. With respect to SNAP eligible food items carried by Newport Mart, the most expensive items were a one-pound package of bacon at $5.65; a five-pound package of sugar at $5.29, and a 1.25 pound ham at $4.99. SUF ¶ 37; AR 84. Dombroski also noted that a Shaws supermarket was directly across the street from Newport Mart,

7

another supermarket was located within a half mile; and a number[3] of other SNAP-authorized stores were within a one-mile radius. SUF ¶ 38; (AR 33).

Based on an analysis of the four categories of statistically unusual EBT transactions and Dombroski's site visit, the FNS determined that Newport Mart engaged in prohibited trafficking of EBT benefits. SUF ¶ 39.

**II. Procedural History**

By letter dated August 7, 2012 (the "Determination Letter"), the USDA informed Newport Mart that the store had violated SNAP regulations and that the USDA was charging Newport Mart with trafficking as defined in Section 271.2. AR 96-98. The USDA noted that the sanction for trafficking was permanent disqualification and it described the four categories of unusual EBT transactions that had occurred at the store between January and March 2012. Id.  The Determination Letter also set out the procedure and conditions under which Newport Mart could make a timely application to be considered for a CMP and it noted that the amount of such a penalty would be $59,000. (AR 97). Newport Mart

---

[3]   Although the USDA asserts in its SUF (without objection from Newport Mart) that it "identified 50 SNAP-authorized stores within a one-mile radius," SUF ¶ 38, that number is not supported by the citation to the AR (AR 161-174). However, the USDA Final Agency Decision notes that, including the supermarket across the street from Newport Mart and two super stores located less than one-quarter of a mile from the store, "[t]here are 11 SNAP-authorized firms within a one-mile radius of Appellant's store." AR 191.

was advised that it could respond to the charges by phone and/or in writing within ten days of receipt of the Determination Letter. (AR 97-98.)

Newport Mart responded by letter dated August 16, 2012, generally denying that it had engaged in trafficking. AR 131-134. In its response, Newport Mart addressed the four categories of EBT transactions by offering the following explanations:

(1) "To avoid having its regular customers wait in line, during the peak sales periods the store oftentimes allows its loyal EBT customers to count and state the amount of their purchase themselves and accept that amount on trust;"

(2) "[t]o avoid having its regular customers wait a long time to ring up the sale of one or two items, it is not unusual at all for the sales clerk to ring up a portion of an EBT customer's purchase and then ring up a regular customer's one or two item purchase and then complete the EBT customer's purchase as a separate transaction;"

(3) "[i]t is not at all unusual for EBT customers to buy most of their groceries at or near the beginning of each month thereby causing them to exhaust most or all of their account at that time[4];" and

---

[4] Newport Mart also explained, with respect to a questioned $409.81 EBT transaction, that an error had occurred. AR 133. In an accompanying affidavit, the customer in question represented that "[t]he sales clerk gave me a credit for the amount charged in error

(4) "[a]t or near the first of the month when recipient EBT accounts are replenished . . . many EBT customers purchase all or most of their groceries for the month." AR 133.

Newport Mart also asserted that it was "not your typical convenience store;" that it "operate[d] as a grocery store;" and that its "highly competitive" prices were competitive with Walmart. AR 133.

By letter dated August 21, 2012, the USDA informed Newport Mart of its finding that the violations cited in the August 7, 2012 charge letter had occurred at the store.[5] AR 137-138. The USDA also stated that Newport Mart was not eligible for a CMP because the store had failed to submit sufficient evidence that it had established and implemented an effective compliance policy and program to prevent violations of SNAP. AR 137. Effective upon receipt of the August 21, 2012 letter, Newport Mart was permanently disqualified from SNAP, unless the disqualification was subsequently reversed through administrative or judicial review. Id.

---

and I used the credit to make purchases at Newport Mart during the month of March 2012." AR 135.

[5] Although the USDA states that Newport Mart did not reply to the August 7, 2012 letter, see AR 137, it is evident from the record that Newport Mart did send a letter in response and that this response was subsequently considered by the USDA. AR 139.

A second USDA letter, dated September 6, 2012, noted that the USDA had given consideration to Newport Mart's written reply but reiterated that, notwithstanding Newport Mart's assertions, the store was found to be in violation of SNAP and it was permanently disqualified from participating therein. AR 139.

By letter dated September 12, 2012, Newport Mart requested a review of the USDA's decision to disqualify the store permanently from SNAP. AR 144-148. In its request for a review, Newport Mart again denied that it had engaged in trafficking and it contended that (1) there was no competent evidence for such an allegation, AR 144; and (2) the USDA's decision ignored competent evidence presented by Newport Mart. AR 145. With respect to the latter assertion, Newport Mart reiterated and expanded on the explanations it had previously offered to address the four categories of suspicious EBT transactions. AR 145-147.

On April 5, 2013, the Administrative Review Branch ("ARB") of the USDA/FNS issued a final agency decision (the "Decision") in which it sustained the permanent disqualification of Newport Mart from SNAP. AR 175-194. The Decision reflects that the ARB considered each of Newport Mart's arguments proffered to explain the four categories of EBT transactions on which the trafficking charge was based, AR 187-188. The Decision also addressed each of Newport Mart's contentions related thereto in some detail. AR

188-194. Based on all the evidence before it and in consideration of the explanation provided by Newport Mart, the ARB sustained the permanent disqualification. AR 194.

On May 2, 2013, Newport Mart filed a complaint (the "Complaint") in this Court, in which it sought (1) a *de novo* review of the USDA's determination that Newport Mart engaged in the trafficking of food stamps; and (2) a stay of the USDA's decision to disqualify Newport Mart from participation in the SNAP program, pending a hearing on the merits. Complaint (Dkt. No. 1). In response, the USDA filed a motion for summary judgment (Dkt. No. 6) on September 18, 2013, to which Newport Mart filed an objection on December 16, 2013 (Dkt. No. 13). Initially, the USDA's motion was administratively terminated because neither side had complied with Local Rule 56, which requires the filing of a separate statement of undisputed/disputed facts. Local Rule LR Cv. 56 (a)(1)-(2).[6]

On January 8, 2014, the USDA refiled its motion for summary judgment (Dkt. No. 15), together with a supporting memorandum and the requisite SUF (Dkt. No. 16). As noted by the USDA in its reply (Dkt. No. 20), Newport Mart did not dispute the USDA's

---

[6] Rule 56 provides that "[f]or purposes of a motion for summary judgment, any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion."Local Rule LR Cv. 56(a)(3).

submitted facts in the SDF (Dkt. No. 18) which Newport Mart submitted in support of its objection. (Dkt. No. 17).

### III. Standard of Review

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(a)." Pruco Life Ins. v. Wilmington Trust Co., 721 F.3d 1, 6 (1st Cir. 2013). In considering a motion for summary judgment, the Court must draw "all reasonable inferences in favor of the non-moving party while ignoring 'conclusory allegations, improbable inferences, and unsupported speculation.' " Id. at 7 (quoting Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir.2009) (quoting Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir.2009)).

Pursuant to 7 U.S.C. §2023, the Court conducts a *de novo* review to "determine the validity of the questioned administrative action." 7 U.S.C. §2023(a)(15); Ibrahim v. United States, 834 F.2d 52, 53-54 (2nd Cir.1987)(noting that "[t]his review 'requires a reexamination of the entire matter rather than a mere determination of whether the administrative findings are supported by substantial evidence.'" (quoting Saunders v. United States, 507 F.2d 33, 36 (6th Cir. 1974)).

However, *de novo* review is applicable only to the USDA's

13

determination that a violation took place. See <u>Objio v. United States</u>, 113 F.Supp.2d 204, 208 (D.Mass. Sept. 29, 2000) (noting that "[t]he First Circuit has adopted a bifurcated standard of review in food stamp cases, applying a de novo standard to the determination of the violation and a limited administrative standard to the sanction imposed."). If the USDA's determination that a violation has taken place is upheld by the district court, a review of the sanction imposed by the USDA is limited to the administrative record, and the sanction is overturned only if it is deemed "arbitrary or capricious."[7] See <u>Wong v. United States</u>, 859 F.2d 129, 132 (9th Cir.1988)(noting that "[w]hereas the FNS finding that a firm violated the Food Stamp Act is reviewed de novo, review of the sanction imposed by the FNS is governed by the arbitrary and capricious standard.")

A party challenging its permanent disqualification from SNAP by the USDA bears the burden of proving by a preponderance of the evidence that the agency's decision was "invalid." 7 U.S.C. §2023(a)(16)[8]. <u>Fells v. United States</u>, 627 F.3d 1250, 1253 (7th

---

[7] The Court notes that Newport Mart has not challenged the severity of the imposed sanction and that it did not avail itself of the opportunity to seek a CMP.

[8] Subsection 2023(a)(16) provides that "[i]f the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence."

Cir.2010)(listing cases and noting that, although the statute is silent as to which party bears the burden of proof, "other circuits have held consistently that, given the nature of the statutory scheme, a store owner who seeks to set aside an agency action bears the burden of proof."). Accordingly, Newport Mart has the burden of proving that it was improperly disqualified from participation in SNAP. Fells v. United States, 627 F.3d at 204 (citing Redmond v. United States, 507 F.2d 1007, 1011–12 (5th Cir.1975) ("[T]he agency action stands, unless the plaintiff proves that it should be set aside.")).

## IV. Discussion

The facts of this case, as detailed by the government in its motion, supporting memorandum, and the SUF, are entirely undisputed by Newport Mart. The additional contentions by Newport Mart set forth in its SDF (Dkt. No. 18) are unsupported by any evidence. Rather, Newport Mart once again seeks to explain the data on which the USDA based its determination that Newport Mart was engaged in trafficking. Newport Mart's contention that "[t]here is no direct proof in the record that EBT cards were 'exchanged for cash or consideration other than eligible food,'" SDF ¶ 2, fails to acknowledge that such direct proof is not necessary under SNAP regulations. See 7 U.S.C. § 2021(a)(2) (disqualification may be based on "inconsistent redemption data,

15

or evidence obtained through a transaction report under an electronic benefit transfer system.")

In essence, Newport Mart offers the same explanations it already asserted in the administrative proceedings. Newport Mart's unsubstantiated contentions attempt to explain the occurrence of four distinct categories of transaction patterns which led to the USDA's determination that Newport Mart was engaged in the trafficking of EBT benefits. However, none of those explanations are supported by evidence and some of Newport Mart's suggestions are directly contradicted by the otherwise unchallenged facts presented by the USDA.

By example, Newport Mart contends that the May 10, 2012 site visit "did not reveal anything unusual or irregular about the store's activities." In fact, the site visit established that the store featured a very small checkout area with only one POS device, no shopping carts or carrying baskets, and only a very limited selection of foods, none of which included high-priced items. Based on those observation alone, Newport Mart's explanations for rapid transactions, large purchases, and quick depletion of EBT accounts are unsupported by the undisputed facts. Likewise, the site visit clearly established that, in contrast to Newport Mart's own characterization, its limited inventory of food items clearly demonstrated that Newport Mart

does not "operate more like as [sic] grocery store." SDF ¶ 14.

Newport Mart also points out that it is in close proximity to several low-income housing projects, in an attempt to explain the increase in customers and/or the size of their purchases. SDF ¶ 7. Newport Mart fails to acknowledge, however, that it is in close proximity to two SNAP-authorized super stores and is located directly across from a SNAP-authorized supermarket with a full complement of groceries. Under those circumstances, and in the absence of any supporting evidence, Newport Mart's explanations regarding large purchases and the rapid exhaustion of EBT accounts fail to raise a material factual dispute.

The transaction patterns identified by the USDA established that considerable numbers of EBT transaction at Newport Mart (1) were made in rapid succession, (2) were made from individual accounts in unusually short time frames, (3) were unusually large, and/or (4) quickly depleted a recipient's EBT account. None of Newport Mart's explanations are substantiated by evidence, nor are they credible in light of the store's location, lay-out, and limited inventory. In sum, Newport Mart's renewed attempt to explain the identified data patterns fails to show, by a preponderance of the evidence, that the USDA's determination that Newport Mart engaged in trafficking of EBT benefits was invalid. Accordingly, Newport Mart's claims cannot withstand the

USDA's motion for summary judgment.

## Conclusion

For the reasons stated herein, the USDA's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment in favor of the USDA.

SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
United States District Judge

February 18, 2014